❐ Original                    ❐ D

CLERK'S OFFICE
A TRUE COPY
Sep 21, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No. |
| Information about the location of the cellular | ) |
| telephone assigned call number | )    23-M-459 (SCD) |
| (602) 800-9419 | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____ 10-5-23 _____ *(not to exceed 14 days)*
❐ in the daytime 6:00 a.m. to 10:00 p.m.  ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Stephen C. Dries _____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❐ for _____ days *(not to exceed 30)*  ☑ until, the facts justifying, the later specific date of _____ 12/20/2023 _____ .

Date and time issued: _____ 9-21-23. 1:30 pm _____       *Stephen C. Dries*
                                                                              _____
                                                                              *Judge's signature*

City and state:   Milwaukee, WI _____       Honorable Stephen C. Dries, U.S. Magistrate Judge
                                                                              *Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

<u>**ATTACHMENT A**</u>

**Property to Be Searched**

1.       Records and information associated with the cellular device assigned call number **(602) 800-9419** (referred to herein and in Attachment B as "**Target Cell Phone**"), subscribed to  Edgar ALMONTE at 2008 W Cocopah ST #41, Phoenix, AZ 85009, that is in the custody or control of T-Mobile, (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

2.       **The Target Cell Phone**.

## ATTACHMENT B

## Particular Things to be Seized

## I.     Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.    The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period January 1, 2023, to the present:

        i.    Names (including subscriber names, user names, and screen names);

        ii.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.    Local and long-distance telephone connection records;

        iv.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.    Length of service (including start date) and types of service utilized;

        vi.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

1

vii.     Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii.     Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix.     All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone for the time period January 1, 2023, to the present including:

      a.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      b.  information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

b.     Information associated with each communication to and from the Target Cell Phone for a period of **30** days from the date of this warrant, including:

i.     Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii.     Source and destination telephone numbers;

iii.     Date, time, and duration of communication; and

iv.     All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

c.      Information about the location of the Target Cell Phone for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, RTT data, GPS data, latitude-longitude data, and other precise location information.

     i.      To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

     ii.      This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.      Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846, involving Edgar ALMONTE and others known and unknown.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

3

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

4



CLERK'S OFFICE
A TRUE COPY
Sep 21, 2023

s/ JDH

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 23-M-459 (SCD) |
| **Information about the location of the cellular telephone assigned call number (602) 800-9419** | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1); 846; & 843(b) | Distribution of controlled substances; Conspiracy to distribute and possess with intent to distribute controlled substances; and Use of communication facilities to facilitate narcotics trafficking. |

The application is based on these facts:
See Attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of __90__ days *(give exact ending date if more than 30 days:* __12/20/2023__ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jacob Cowan, FBI SA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date: __9-21-23__

_____
*Judge's signature*

City and state: __Milwaukee, WI__

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

<u>**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**</u>

I, Jacob Cowan, being first duly sworn, hereby depose and state as follows:

<u>**INTRODUCTION AND AGENT BACKGROUND**</u>

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(602) 800-9419** (the "**Target Cell Phone**"), which is subscribed to EDGAR ALMONTE at 2008 West Cocopah Street #41, Phoenix, Arizona 85009 and known to be used by Edgar Almonte, and whose service provider is T-Mobile US, Inc. (T-Mobile), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey. The **Target Cell Phone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.  *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  *See* 18 U.S.C. § 3123(b)(1).

3.      I am a sworn federal law enforcement officer with the Federal Bureau of Investigation (FBI), with authority to investigate federal offenses pursuant to Titles 18, and 21 of the United States Code. I have been employed as a Special Agent with the

FBI since June 2016. Prior to this, I served as an Officer in the United States Army for twelve years. I have obtained a Bachelor of Science Degree in Criminal Justice from the University of Wisconsin-Milwaukee, a Master's in Professional Studies (M.P.S.) from St. John's University, and a Post Graduate Certificate from the Kennedy School of Government at Harvard University. I graduated from the FBI Academy in Quantico, Virginia in 2016 and have over seven years of law enforcement experience. I have been involved in the enforcement and investigation of numerous violations of federal law to include drug trafficking investigations, firearm trafficking investigations, and violent crime related cases. I have personally conducted and participated in numerous investigations that have given me familiarity with the various methods that criminals use to conduct illicit firearm and narcotics transactions in violation of federal law. I have used investigative techniques including, but not limited to: consensual monitoring, physical surveillance, witness and subject interviews, court authorized electronic surveillance, review and analysis of telephone records, and the execution of search and arrest warrants.

4.      In addition to my experience in the investigation of individuals involved in federal criminal offenses, I also have knowledge and experience in the apprehension and prosecution of individuals involved in federal criminal offenses. I am familiar with and have experience in the use of cellular devices used to commit those offenses as well as the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their locations.

3

7.     The facts in this affidavit come from case agents' observations, training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my or case agents' knowledge about this matter.

8.     Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

9.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 846 (conspiracy to distribute and possess with intent to distribute controlled substances), 841(a)(1) (distribution of controlled substances), and 843(b) (use of communication facilities to facilitate narcotics trafficking) have been committed, are being committed, or will be committed by Edgar ALMONTE (ALMONTE), and others.  There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

10.    The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

4

**PROBABLE CAUSE**

9.      The Federal Bureau of Investigation ("FBI") is investigating allegations that members of the Gangster Disciples street gang, including EDGAR ALMONTE, are conspiring with each other, and other individuals yet unknown, to transport and distribute controlled substances, namely heroin and fentanyl in Racine, Wisconsin.  The investigation has revealed that ALMONTE is believed to reside in Phoenix, Arizona, and that he has used the **Target Cell Phone** in furtherance of drug-trafficking activity.

10.      On or about May 9, 2023, Racine County Sheriff Office (RASO) Metro Drug Agents along with High Intensity Drug Trafficking Area (HIDTA) Agents obtained information from HIDTA that a suspicious package was dropped off at the United Parcel Service (UPS) in Phoenix, Arizona and addressed to 1602 Carlton Drive in the City of Racine, County of Racine, Wisconsin with the recipient's name of "John Bean."

11.      HIDTA Agents learned a narcotics K9 alerted to the presence of illegal narcotics emanating from the package, obtained a search warrant for said package, and revealed its contents.  Agents discovered approximately 2,275 grams of blue round tablet marked "M30" pills.  Based on your affiants training and experience as a Special Agent, your affiant knows "M30" pills are oxycodone hydrochloride, but in some cases can also be counterfeit pressed fentanyl pills.

12.      RASO Metro Drug Agents later processed and inventoried the suspected pressed fentanyl pills.  A Nark II field test kit yielded a positive result for fentanyl.  A net weight of 2,280 grams, and quantity of 20,531 pills was recorded.

5

13.     RASO Metro Drug Agents conducted a debrief of the intended recipient of the package, now known as Confidential Source 1 (CS-1). On May 9, 2023, after investigators seized the fentanyl pills from the above-described parcel, the parcel was supplied with sham narcotics and delivered to the intended address. That same day, investigators observed CS-1 pick up the parcel from 1602 Carlton Drive in Racine, Wisconsin, and drive away. Investigators followed CS-1, who eventually detected law enforcement presence, tossed the parcel from the vehicle, and successfully fled from law enforcement officers.

14.     In approximately July 2023, RASO Metro Drug Agents met with CS-1, at which time CS-1 stated that CS-1 was the intended recipient of the pressed fentanyl pills, and that the pressed fentanyl pills originated from EDGAR ALMONTE (ALMONTE). CS-1 further stated that CS-1 met ALMONTE when they were incarcerated together in approximately 2016. CS-1 stated that in 2018, after CS-1 was released from prison, CS-1 began buying fentanyl pills from ALMONTE.  Since 2018, CS-1 stated ALMONTE would ship approximately one to two packages of pressed fentanyl pills per week to various addresses throughout the City of Racine for CS-1 to pick up.  CS-1 stated each package would contain approximately 10,000 pressed fentanyl pills. CS-1 stated that CS-1 also obtained heroin from ALMONTE on a few occasions.  CS-1 further stated ALMONTE's primary method of shipment was via UPS, however, ALMONTE would also deliver narcotics in person, or had another individual deliver in person for him.

15.     CS-1 stated upon selling the pressed fentanyl pills, ALMONTE previously shipped from Arizona, ALMONTE would then fly into Milwaukee International Airport

6

(MKE), stay at a local hotel, and CS-1 would meet with ALMONTE to turn over proceeds in the amount of approximately $35,000 - $40,000 each visit.

16.     CS-1 stated ALMONTE told CS-1 that ALMONTE's source of supply was the Sinaloa Cartel in Mexico. CS-1 stated when CS-1 met ALMONTE in person during two different in-person narcotics transactions ALMONTE told CS-1 he was only allowed by the Sinaloa cartel to sell fentanyl pills, meth, and heroin.

17.     CS-1 began providing information to law enforcement in July 2023. CS-1 previously worked as a confidential informant with the Racine Police Department and Racine Sheriff's Department between approximately August 2021 and November 2022, and was paid $1,670 by the Racine Police Department. CS-1 is now cooperating in exchange for consideration on pending federal drug-related offenses. The information provided by CS-1 to law enforcements agents is substantially against CS-1's penal interest. Additionally, to the extent possible information provided by CS-1 has been corroborated by agents through external sources, including physical evidence, consensually recorded telephone calls, phone toll information, audio recordings, surveillance, and law enforcement databases. CS-1 has a criminal history that includes battery, resisting arrest, disorderly conduct, possession of a controlled substance, manufacturing and delivery of a controlled substance, and various motor vehicle violations. Within the context of the information detailed and relied upon for purposes of this affidavit, case agents believe CS-1 is credible and CS-1's information reliable.

18.     CS-1 stated most communications with ALMONTE were via Facebook Messenger and provided ALMONTE's Facebook username of "Cha Ggi." Case agents

7

identified ALMONTE's Facebook Account as https://www.facebook.com/ shaggy.almonte.50. Upon reviewing ALMONTE's Facebook, CS-1 confirmed the individual in the Facebook profile picture appeared to be ALMONTE, though his face was covered with a purple devil smiling emoji.

19.     RASO Metro Drug Agents reviewed the communication via Facebook Messenger between ALMONTE and CS-1 and observed illegal narcotics logistical communication dating back to approximately December 2017. Facebook communications between ALMONTE and CS-1 reflect that ALMONTE supplied the fentanyl pills that were seized by agents on or about May 9, 2023. Specifically, ALMONTE sent CS-1 a Facebook message and said, "I saw on ur page on a comment u was on the news nd that's how I knew." CS-1 said, "Oh ok I was trying to tell you without telling you shittt had went sour." ALMONTE said, "6028178359 give me a call when u can fam." CS-1 said, "But I hired a lawyer they would have to prove I had knowledge that I knew anything ok bet soon as my chic leave I got you because ion want her in our business." Based on their training, experience, familiarity with this investigation, and CS-1's debrief, case agents believe that ALMONTE contacted CS-1 about the fentanyl pills that were seized by law enforcement and CS-1 did not want to alarm ALMONTE about the seizure. Case agents further know that the incident involving CS-1 and the fentanyl pills was aired on public television shortly after it occurred in May.

20.     CS-1 stated CS-1 also communicated with ALMONTE via the Facebook Messenger calling feature, cell phone text messaging, and telephone calls. RASO Metro Drug Agents reviewed the cell phone text communications between ALMONTE and CS-

1, which also included illegal narcotics logistical communications. A few examples of these communications are as follows:

      a.      On April 3, 2023 CS-1 texted ALMONTE, using telephone number (602) 829-2631, and said, "I got your pape blues all out need more ASAP." On April 4, 2023, ALMONTE responded and said, "Get me another good AD fam." CS-1 said, "Ok hold up, 1445 College Ave Racine, Wi 53403." ALMONTE said, "[Strong arm emoji], Ama get it all ready ill get out there tomorrow to we good to go." CS-1 said, "[Strong arm emoji]." Based on their training, experience, familiarity with this investigation, and CS-1's debrief, case agents believe that CS-1 told ALMONTE that CS-1 had drug proceeds for ALMONTE ("pape"), that CS-1 sold all the fentanyl pills provided by ALMONTE, and that CS-1 needed ALMONTE to send more. ALMONTE asked for a good address to send a resupply of fentanyl pills to CS-1, and CS-1 provided the address for shipment.

      b.      On April 21, 2023, ALMONTE, using telephone number (602) 829-7631, texted CS-1 and said, "Ok so we good then, have him let it cool for alittle." Also included in the text was a screen shot of parcel delivery on Friday, April 21 at 2:18 p.m., wherein UPS indicated that the parcel was left on the porch of an address in Racine, Wisconsin. CS-1 said, "Ok bet." ALMONTE said, "Bet fam ill update u on the other in a bit." CS-1 said, "Bet." On April 22, 2023, CS-1 sent ALMONTE an eye emoji. ALMONTE said, "Im wwitin on em now shit dry out here bad I should have e mtn tryin get em to u asap." Based on their training, experience, familiarity with this investigation, and CS-1's debrief, case agents believe ALMONTE sent CS-1 a text message confirming the delivery of fentanyl pills to CS-1's location.

**ALMONTE Uses the Target Cell Phone to Further Narcotics Transactions**

21.      On or about July 26, 2023, at the direction of case agents, CS-1 called ALMONTE at telephone number (602) 817-8359. ALMONTE did not answer the telephone call, but later that same day ALMONTE and CS-1 communicated via Facebook Messenger. CS-1 said via Facebook Messenger, "You ain't get my text I tried hitting yo line yesterday Nep said he Dan near got that together shoot you new line because ion he having service we're I can hit you on here all the time." ALMONTE responded via Facebook Messenger, "6028009419," the **Target Cell Phone**. CS-1 said, "Nep said he will be ready so I was hitting you letting you know I'll have that for you soon." ALMONTE responded via Facebook Messenger, "Bet hella yea got his other pair to lets get it fam." CS-1 said, "Need you to be on point with ours too but if not then I'm just have to fucckk with his way because my bread getting funny."

22.      Based on their training, experience, familiarity with this investigation, and CS-1's debrief, case agents believe that CS-1 was asking for ALMONTE's new telephone number to discuss future transactions of narcotics sales. It is further believed that CS-1 told ALMONTE that CS-1 needed ALMONTE's telephone number because CS-1 did not think conversation could continue over Facebook Messenger due to a poor internet connection. CS-1 told ALMONTE that CS-1 had money to pay ALMONTE and that CS-1 needed to ensure the product CS-1 was receiving from ALMONTE was good quality.

23.      On September 18, 2023, CS-1 sent a text message to the **Target Cell Phone** and said, "Fat Boi bout head to crib get lil rest when I wake up I'm bout hit you goo." ALMONTE said, "Moving to a new crib." CS-1 said, "Lol me too today." ALMONTE

said, "Tats good sighs new beginnings get rid off all old vibes 100." CS-1 said, "Facts." ALMONTE said, "Soon as I finish unloadin ill call u." CS-1 said, "Ok."

24.     Based on their training, experience, and familiarity with this investigation, case agents believe that ALMONTE told CS-1 that he (ALMONTE) is excited to start trafficking narcotics again with CS-1 ("Tats good sighs new beginnings get rid off all old vibes 100").

25.     On September 18, 2023, CS-1 received a telephone call from the **Target Cell Phone**.  CS-1 said CS-1 had $5,000 in United States currency to give ALMONTE if ALMONTE wanted to come out and get it (meaning if ALMONTE traveled to Milwaukee). ALMONTE said, "Let's do that." CS-1 then said CS-1 was only going to distribute a certain amount of narcotics at a time so ALMONTE would not be waiting and CS-1 would not be waiting to get paid. CS-1 said, "My things is the blues, I need to get my thing going again." ALMONTE said, "Yeah, well let me get this shit set up and I'll text you when I'll be there and we will chop it up over there. CS-1 then said, "Put my together." ALMONTE said, "That is what I want to discuss with you."

26.     Based on their training, experience, and familiarity with this investigation, case agents believe that during this call, CS-1 told ALMONTE that CS-1 had $5,000 to provide to ALMONTE, which case agents know CS-1 to owe ALMONTE for a previous drug debt. CS-1 further told ALMONTE that he wants to distribute fentanyl pills ("the blues") and that CS-1 needs to start distributing fentanyl pills again ("I need to get my thing going on"). ALMONTE then told CS-1 that he (ALMONTE) would be traveling to

11

Milwaukee, would text CS-1 when he arrives, and they could discuss narcotics distribution then ("we will chop it up over there").

## CONCLUSION

29. Evidence obtained during this investigation leads case agents to believe that ALMONTE operates the **Target Cell Phone**. The location data associated with the **Target Cell Phone** will assist case agents in conducting targeted physical surveillance and further identify the locations and individuals associated with and the nature and scope of ALMONTE's drug trafficking activities.

30. Case agents searched law enforcement databases to confirm that the **Target Cell Phone** is currently being serviced by T-Mobile.

31. Case agents are requesting this warrant authorizing the initial collection of data related to the **Target Cell Phone** for **30** days to further investigate ALMONTE's activities, to identify ALMONTE's residence, and to identify locations to which ALMONTE is traveling to further his drug distribution trafficking activities.

32. Based upon my training and experience, I know that individuals involved in drug trafficking use their cellular telephones to contact other drug dealers and drug purchasers, and that information relating to their telephones may show the areas in which they are trafficking drugs and the individuals who they are contacting to sell or distribute the drugs. Based upon the facts in this affidavit, there is probable cause to believe that ALMONTE is engaged in the trafficking and distribution of controlled substances and is using the **Target Cell Phone** while engaged in these crimes. I further submit that probable cause exists to believe that obtaining the location information of

the **Target Cell Phone** will assist case agents in determining ALMONTE's criminal activities, to include meeting locations, co-conspirators, and sources of supply.

33.     In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

34.     Based on my training and experience, I know that T-Mobile can also collect timing advance or engineering data commonly referred to as per call measurement data (PCMD), RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent.

### Cell-Site Data

35.     Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the **Target Cell Phone**. Based on my

13

training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

36.    Based on my training and experience, I know that T-Mobile also can collect per-call measurement data or precision location information, which T-Mobile refers to as WebMap. Per-call measurement data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

### E-911 Phase II / GPS Location Data

37.    I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies

14

the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

### Subscriber Information

38.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **Target Cell**

15

**Phone's** user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

39.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

40.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

41.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **Target Cell Phone** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

42.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until **90 days** after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing

16

immediate notice to the subscriber or user of the **Target Cell Phone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to change patterns of behavior and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

43. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

<u>**ATTACHMENT A**</u>

**Property to Be Searched**

1.      Records and information associated with the cellular device assigned call number **(602) 800-9419** (referred to herein and in Attachment B as "**Target Cell Phone**"), subscribed to  Edgar ALMONTE at 2008 W Cocopah ST #41, Phoenix, AZ 85009, that is in the custody or control of T-Mobile, (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

2.      **The Target Cell Phone**.

**ATTACHMENT B**

**Particular Things to be Seized**

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

   a.      The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period January 1, 2023, to the present:

      i.      Names (including subscriber names, user names, and screen names);

      ii.      Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

      iii.      Local and long-distance telephone connection records;

      iv.      Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

      v.      Length of service (including start date) and types of service utilized;

      vi.      Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii.        Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii.       Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix.       All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone for the time period January 1, 2023, to the present including:

      a.   the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      b.   information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

b.      Information associated with each communication to and from the Target Cell Phone for a period of **30** days from the date of this warrant, including:

i.       Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii.      Source and destination telephone numbers;

iii.     Date, time, and duration of communication; and

iv.     All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

c.  Information about the location of the Target Cell Phone for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, RTT data, GPS data, latitude-longitude data, and other precise location information.

i.  To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii.  This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.  Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846, involving Edgar ALMONTE and others known and unknown.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

3

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

4

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by T-Mobile, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of T-Mobile. The attached records consist of _____.

I further state that:

a. All records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of T-Mobile and they were made by Verizon as a regular practice; and

b. Such records were generated by T-Mobile's electronic process or system that produces an accurate result, to wit:

1. The records were copied from electronic device(s), storage medium(s), or file(s) in the custody of T-Mobile in a manner to ensure that they are true duplicates of the original records; and

2

2.       The process or system is regularly verified by T-Mobile and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____      _____

Date                             Signature